*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAM FOERSTER,

        Plaintiff-Appellee,

v

CARRICE MCKINSTRY,

        Defendant-Appellant.

UNPUBLISHED
July 23, 2025
2:04 PM

No. 372759
Houghton Circuit Court
Family Division
LC No. 13-015581-DC

Before: CAMERON, P.J., and REDFORD and GARRETT, JJ.

PER CURIAM.

Plaintiff and defendant are the biological parents of two minor children, and they share a custody arrangement that dictates which residence the children will live in during the school year. Defendant appeals as of right the trial court's order modifying the custody arrangement so that the children would attend school where plaintiff lives and not where defendant lives. On appeal, defendant argues that the trial court (1) improperly analyzed a number of the change-of-residence factors from MCL 722.31(4); (2) improperly looked to circumstances that occurred after the original custody and parenting-time order, but before the modification to the order that preceded the order on appeal, in concluding that the existing custody arrangement should be revisited; and (3) made findings under the best-interest factors that were against the great weight of the evidence. We affirm.

## I. BACKGROUND

The parties in this case were never married. After the breakdown of the parties' cohabitating relationship, in March 2014 an initial custody order was entered awarding the parties joint legal custody. In June 2015, defendant moved from Michigan to Santa Fe, New Mexico. The children attended school in Santa Fe, but plaintiff had substantial parenting time. In November 2023, defendant moved to modify the child-support arrangement, because she had been totally and permanently disabled. Thereafter, in February 2024, plaintiff moved to modify custody, seeking to have the children attend school in Houghton, Michigan, and contending, in part, that the evidence of a total and complete disability on the part of defendant warranted a revisiting of the custody arrangement. The trial court held a hearing on what it termed a "change of domicile"

under MCL 722.31(4),[1] and it used the hearing as an opportunity to determine whether a full custody hearing should take place. The trial court concluded that a full custody hearing was warranted, and, after that hearing, it ultimately concluded that a majority of the best-interest factors from MCL 722.23 favored plaintiff. The trial court ruled that the children should spend the school year in Houghton with plaintiff. The trial court granted defendant liberal parenting time. This appeal followed.

## II. STANDARDS OF REVIEW

"Under the Child Custody Act, MCL 722.21 *et seq.*, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting MCL 722.28. As stated in *Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003):

> [This Court] appl[ies] three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [Quotation marks and citations omitted.]

## III. CHANGE IN RESIDENCE

Defendant contends that the trial court erred in various respects when addressing the change-of-residence factors from MCL 722.31(4), particularly when analyzing factors (a), (b), and (d). Plaintiff contends that the trial court made no errors in its analyses but that, more importantly, the factors were inapplicable to the circumstances at issue because neither parent was intending to change residences. We conclude MCL 722.31 was inapplicable to plaintiff's motion because, despite the manner in which it was titled, plaintiff sought to modify custody without also seeking to change the children's residences.

MCL 722.31 governs a parent's request to change a child's residence more than 100 miles from the child's legal residence. MCL 722.31 states, in part:

> (1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than

---

[1] As explained *infra*, this hearing was unwarranted because neither parent was intending to move from their current homes.

-2-

100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

* * *

(3) This section does not apply if, at the time of the commencement of the action in which the custody order is issued, the child's 2 residences were more than 100 miles apart. This section does not apply if the legal residence change results in the child's 2 legal residences being closer to each other than before the change.

(4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

As stated in *Richardson v Allstate Ins Co*, 328 Mich App 468, 473; 938 NW2d 749 (2019), "When statutory language is unambiguous, it is applied as written and further construction by the Court is not required or permitted." The language of MCL 722.31(1), which states that a child has "a legal residence with each parent," contemplates that a child can have two legal residences. Lending further support to this understanding, subsection (5) refers to agreements regarding a change in "either of the child's legal residences." MCL 722.31(5). Accordingly, for purposes of applying this statute, a child may have legal residences with each parent.

In this case, the children had two legal residences. They resided with defendant in Santa Fe, New Mexico, during the school year and with plaintiff in Houghton, Michigan, during summer breaks. The parents shared joint custody of the children. Plaintiff's motion did not seek to change the children's residence as contemplated by MCL 722.31. Rather, plaintiff sought to change the

custody arrangement by changing the residence the children resided in during the school year and summer break. The statute clearly did not apply to plaintiff's motion because the parents had joint custody of the children, the children had two legal residences, and neither parent was proposing to move from those residences.

It is true that plaintiff styled the motion "to change domicile, child custody, and parenting time." However, as stated in *Lieberman v Orr*, 319 Mich App 68, 77 n 4; 900 NW2d 130 (2017), "A court is not bound by what litigants choose to label their motions because this would exalt form over substance." (Quotation marks and citation omitted.) "Rather, courts must consider the gravamen of the complaint or motion based on a reading of the document as a whole." *Id*. The circumstances demonstrate that a change of residence was not being contemplated such that MCL 722.31 was implicated.

Defendant contends that *Brausch v Brausch*, 283 Mich App 339; 770 NW2d 77 (2009), supports her arguments on appeal. Her argument is misplaced, however, because the Court in *Brausch*, *id*. at 352-353, clearly stated that MCL 722.31 did not apply to the circumstances at issue in that case. The *Brausch* Court stated that the trial court had "blurred" certain issues and improperly applied the statute. *Id. Brausch* is not supportive of defendant's argument regarding MCL 722.31.

Defendant further contends that plaintiff cannot argue that MCL 722.31 was inapplicable because he did not file a cross-appeal. But a cross-appeal is not necessary to argue an alternative basis for affirmance. *Boardman v Dep't of State Police*, 243 Mich App 351, 358; 622 NW2d 97 (2000) ("[A] cross appeal is not necessary to urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court or tribunal."). Defendant also contends that plaintiff agreed to an analysis of the factors. As stated in *Brausch*, 283 Mich App at 353, however:

> In order to interpret the statute and the court rule as the trial court did, i.e., ruling that the 100-mile rule of MCL 722.31 is inapplicable to moves outside Michigan and applying the change of domicile factors to all moves outside Michigan, this Court would have to "read" provisions and meanings into the statute and the court rule that are not explicitly or patently so worded. We cannot do that. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

Simply put, the trial court was not free to change the wording of the statute so as to make it applicable. *Id*.[2] Moreover, as further discussed in Part IV, the trial court recognized that MCL

---

[2] In her reply brief, defendant relies on MCR 3.211(C)(1). This court rule states that "[a] judgment or order awarding custody of a minor must provide that . . . the domicile or residence of the minor may not be moved from Michigan without the approval of the judge who awarded custody or the judge's successor." Plaintiff was not seeking to move the children from Michigan but was requesting that they spend more time in Michigan than they had been under the prior parenting-time order.

722.31 was inapplicable and decided to use the factors from MCL 722.31(4) as a "proxy" for its determination on whether the custody arrangement should be revisited.

## IV. PROPER CAUSE OR CHANGE IN CIRCUMSTANCES

Defendant next argues that the trial court erred in its determination that plaintiff had met the threshold to revisit custody because nothing of note had changed since the last custody arrangement to justify revisiting custody. We disagree.

"As set forth in MCL 722.27(1)(c), when seeking to modify a custody or a parenting-time order, the moving party must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Lieberman*, 319 Mich App at 81. The trial court may not "revisit an existing custody decision and engage in a reconsideration of the statutory best-interest factors" unless the moving party demonstrates proper cause or a change of circumstance by a preponderance of the evidence. *Pennington v Pennington*, 329 Mich App 562, 571; 944 NW2d 131 (2019). In *Vodvarka*, 259 Mich App at 512-514, this Court specified the threshold requirements a party seeking a change of custody must satisfy:

> [T]o establish "proper cause" necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court. The appropriate ground(s) should be relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being. When a movant has demonstrated such proper cause, the trial court can then engage in a reevaluation of the statutory best interest factors.
>
> * * *
>
> [I]n order to establish a "change of circumstances," a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed. Again, not just any change will suffice, for over time there will always be some changes in a child's environment, behavior, and well-being. Instead, the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. This too will be a determination made on the basis of the facts of each case, with the relevance of the facts presented being gauged by the statutory best interest factors.

Contradictory to her argument that the trial court erred by finding there was either proper cause or a change in circumstances to revisit custody, defendant first argues that the trial court made no finding regarding proper cause or a change in circumstances. We disagree. After holding a hearing on the factors in MCL 722.31(4), the trial court recognized in its opinion issued from the bench that MCL 722.31 was inapplicable. Even though it recognized the inapplicability of the statute, the trial court decided to use the factors from MCL 722.31(4) as a "proxy" for its

determination on whether the custody arrangement should be revisited, noting that if anything, the factors in MCL 722.31(4) provided heightened protection to the children. Applying the factors, the trial court concluded that revisiting the custody arrangement was warranted.

In its determination that plaintiff had met the threshold to revisit custody, the trial court placed great emphasis on defendant's health. In defendant's own pleading to modify child support, she alleged that there had been a recent change in circumstances that warranted a recalculation. Specifically, she said that she had "recently been determined to have a total and permanent disability by the federal government and is unable to work" and alleged that she "had no meaningful income" for the past few years. She attached a document from a physician that indicated that she was fully disabled because of "chronic fatigue" and "postural orthopedic tachycardia syndrome." In an additional pleading, she attached another document from a physician that stated that she had recently had "two episodes of fatigue lasting 3 days each where she had to stay in bed." The pleading further stated that she had a history of bipolar disorder and "had episodes of severe disability leaving her bed bound several days per week over the last 2-3 years." Defendant's adult son stated that the minor children "became a lot more self-sufficient" because of defendant's health problems, and that, in the past year, defendant had been improving but before then she was "bedridden" and not "able to do a lot." Therefore, given defendant's own pleadings, the trial court did not err in holding that the custody arrangement should be revisited because there was evidence that adequately supported proper cause or a change in circumstances.

Defendant argues that in making the threshold determination, the trial court erred by looking to evidence that predated the previous custody arrangement, and defendant relies on *Vodvarka*, *id*. at 513, for the proposition that "in order to establish a 'change of circumstances,' a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed."

We note, however, that "proper cause" is not necessarily restricted to information arising since the last custody order. The *Vodvarka* Court stated:

> [T]he movant cannot rely on facts that existed before entry of the custody order to establish a "change" of circumstances.
>
> The same is not necessarily true for proving proper cause, though in most cases it will hold true. The phrase "proper cause" is not by the words themselves tied to a change in events as is "change of circumstances." Rather, proper cause is geared more toward the significance of the facts or events or . . . the appropriateness of the grounds offered. However, we believe a party would be hard-pressed to come to court after a custody order was entered and argue that an event of which they were aware (or could have been aware of) before the entry of the order is thereafter significant enough to constitute proper cause to revisit the order. However, there can be such situations. This case provides such an example. [*Id*. at 514-515.]

In this case, the evidence demonstrated that it was not until defendant filed her pleadings regarding child support that the extent of her illness became apparent to plaintiff. Plaintiff stated

-6-

that he was concerned about defendant's ability to care for the children for long periods because of the disabilities she asserted she had. He said that he did not file his change-of-custody motion for any reasons having to do with child support but because he was concerned about defendant's reference to being totally and permanently disabled. As set forth in this opinion, evidence of recent disability and recent periods of being bedridden were presented.

To demonstrate that the trial court was already aware of defendant's medical issues before the previous custody arrangement, defendant cites the previous custody arrangement's hearing where a vague reference was made to an unspecified medical condition that might interfere with defendant's ability to travel. At other points during that same hearing, defendant said that she had "health concerns" and "immune compromised something." These vague references to illness were much less specific than the evidence of complete and permanent disability provided with her child-support pleadings. The recently provided evidence of recent periods of complete disability provided a basis for the trial court to revisit custody.[3]

Defendant also contends that plaintiff only moved to change custody for the ulterior purpose of defeating defendant's motion to increase his child-support payment, but defendant has failed to substantiate this claim. Further, plaintiff argued that he did not file his motion for any reasons having to do with child support but because he was concerned about defendant's reference to being totally and permanently disabled. Plaintiff said that he had suspected that something was amiss for some time and that defendant's admissions in her filings confirmed his suspicions.

Given all this information, the evidence did not clearly preponderate in the opposite direction from the trial court's conclusion that custody should be revisited. See *Corporan v Henton*, 282 Mich App 599, 604-605; 766 NW2d 903 (2009).

## V.  BEST-INTEREST FACTORS

Lastly, defendant challenges the trial court's findings regarding several of the statutory best-interest factors. Concluding that the trial court's findings were not against the great weight of the evidence, we disagree.

MCL 722.23 sets forth the best-interest factors as follows:

> As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

---

[3] As part of this issue, defendant makes a brief statement that the trial court could not rely on events that predated the previous custody arrangement to justify its ultimate custody decision. Defendant does not set forth in what manner the trial court did so. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (quotation marks and citation omitted).

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(*i*) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.  A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

Defendant contends that the trial court should not have concluded that plaintiff was favored regarding Factors (b) (the capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any) and (c) (the capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs) because the trial court erred when it primarily focused on the anarchist political beliefs of her live-in boyfriend even though he had said that anarchy involved love and compassion.

The record reveals, however, that the trial court focused on much more than just the boyfriend's beliefs in analyzing these factors. It noted that defendant showed poor judgment by allowing one of the children, while only 9 or 10 years old, to get a drastic, shaved hairstyle immediately before plaintiff's wedding, knowing that plaintiff would be displeased about it. And the trial court placed substantial emphasis on the poor judgment displayed by defendant when she got the children a new dog and a new cat in the midst of the custody battle. The trial court found this to be "highly manipulative." The trial court noted that plaintiff had a well-paying job and healthcare through his wife's job, whereas defendant was unemployed and relying on the income of her boyfriend.

The trial court did also mention the boyfriend's political beliefs, and defendant contends that this was improper because he espoused a belief in love and compassion. However, defendant admitted that the boyfriend had posted on Facebook things such as *When I'm in my head, I'm dangerous to myself and others, my beautiful violence wants to come back* but I refuse to lose what I have" (emphasis added). Further, the boyfriend admitted to posting online that "[if] they start messing with our children, we can relapse on violence and the [inaudible] will be so beautiful," and he spoke about teaching the children "values." Given that he espoused violence, the trial court did not err by relying in part on the boyfriend's beliefs.

Defendant also contends that the trial court should not have taken into account that defendant brought a person, who was addicted to methamphetamine, around the children because, as opposed to the trial court's characterization, defendant's help was laudable. Contrary to defendant's argument, the trial court noted its appreciation for defendant's desire to support a person in recovery. However, the trial court emphasized that defendant brought this person into contact with the children soon after the person was released from a rehabilitation facility, without adequate consideration for the children's safety.

Defendant also contends that the trial court did not take into account that plaintiff had allegedly obstructed medical care for the children. However, plaintiff testified that defendant had gotten orthodontic care for one of the children without informing him, and he wanted input into the decision-making. He explained that, regarding the other child's braces, he wanted to see if they could be applied after the custody decision was finalized, to ensure continuity of care. As for the issue of getting the children counseling, plaintiff accurately notes on appeal that the trial court had earlier determined that it was not needed, and, in fact, defendant's attorney conceded as much. The trial court's decision to weigh Factors (b) and (c) in favor of plaintiff is not against the great weight of the evidence.

Defendant next contends that the trial court should have concluded that the parties were equally favored regarding Factors (d) (the length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity) and (e) (the permanence, as a family unit, of the existing or proposed custodial home or homes), instead of weighing them in favor of plaintiff, because there was no indication that defendant's environment was any less stable or permanent than plaintiff's residence. But the trial court properly noted that defendant had no interest in the house where she was living with her boyfriend. She was also not employed. Plaintiff stated that defendant had been telling him for years that she and the children were living in a different home when, in fact, defendant was renting out that property to pay the mortgage on the house. Further, defendant's boyfriend stated that he did not know whether he and defendant would

break up. In addition, defendant was still married to a different man. Therefore, the trial court's conclusion that plaintiff's environment was more stable and permanent was not erroneous.

Regarding Factor (g) (the mental and physical health of the parties involved), defendant contends that the trial court should not have found that it favored plaintiff because the trial court relied solely on defendant's diagnoses of illness, whereas the evidence showed that defendant could still parent well despite the diagnoses. However, physician letters indicated that defendant had a serious disability, with episodes of being bedbound for days at a time. The trial court, as the finder of fact, was the arbiter of credibility and was allowed to discredit testimony from the defense that defendant had substantially recovered just before the custody hearings. See, generally, *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008). Also, defendant's adult son said that the children "became a lot more self-sufficient" because of defendant's health problems. The trial court's determination regarding Factor (g) is not against the great weight of the evidence.

Next, defendant contends that the trial court should have concluded that defendant was favored regarding Factor (h) (the home, school, and community record of the child) instead of weighing this factor equally, because the children's school and community activities were centered in Santa Fe, not in Houghton. But evidence was presented that the children had familiarity with the schools in Houghton and spent time with extended family members in Michigan. Plaintiff's wife explained that because of her job at the Houghton schools, the children had spent a lot of time at the middle school and high school, "know the students there," and know many of the employees. Further, one of the children was involved in golf in Houghton, and the other knew the cross-country coach and was interested in running. Moreover, there had been some issues with tardiness and absences in Santa Fe that were likely to not exist in Houghton in light of the close proximity of plaintiff's home to the schools. The trial court's determination regarding Factor (h) is not against the great weight of the evidence.

Defendant's arguments regarding the trial court's findings of the best-interest factors are not persuasive. This Court must afford due deference to the trial court's decision. *Sabatine v Sabatine*, 513 Mich 276, 292; 15 NW3d 204 (2024). The findings were not against the great weight of evidence. *Id.* No basis for reversal is present in this case.

Affirmed.

/s/ Thomas C. Cameron
/s/ James Robert Redford
/s/ Kristina Robinson Garrett